**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DAVID J. ELKINS,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 14-476 (JEB)** |
| **FEDERAL AVIATION ADMINISTRATION,** | |
| **Defendant.** | |

**MEMORANDUM OPINION**

Motivated by his belief that the government is investigating him through unlawful aircraft surveillance, Plaintiff David Elkins has repeatedly submitted Freedom of Information Act requests to the Federal Aviation Administration asking for records of specific airplane flights. Although at first glance this might appear to be tinfoil-hat material, the history of the case reveals some basis for Elkins's theory. In the FOIA request at issue here, Plaintiff sought records pertaining to a flight he observed near St. Petersburg, Florida, in July 2013. In response to this request, the FAA conducted a search and released some responsive voice transmissions that were partially redacted under FOIA Exemption 7(E). Dissatisfied with the FAA's response, Plaintiff brought this suit. The agency has now filed a Motion for Summary Judgment. Because Defendant has neither established that it conducted an adequate search for the requested records nor clearly explained its withholdings, the Court will deny the Motion.

**I.      Background**

Since 2005, Plaintiff has filed numerous FOIA requests with the FAA, seeking to obtain records of certain aircraft he has observed flying overhead. See Compl. at 2-6. Plaintiff's stated

purpose in seeking those records is to expose and document unlawful government surveillance.

Id. at 3.  His FOIA requests have met with varying levels of success, and this suit marks the third

occasion that Elkins has turned to the courts in order to obtain release of withheld records.  See

Elkins v. FAA, No. 12-2009 (M.D. Fl. filed Sept. 5, 2012); Elkins v. FAA., No. 08-1073, 2010

WL 23319 (D. Or. Jan. 4, 2010).

Plaintiff submitted the particular FOIA request in contention here on July 19, 2013.  See

Opp., Exh. B.  He alleges that on that same day at 7:40 a.m., he observed an aircraft circling over

his private residence in St. Petersburg/Lealman, Florida, which then followed him for some time.

Compl. at 5.  Plaintiff's original request asked the FAA to provide the following information:

> The N number, [t]he law enforcement agency op[]erating the
> aircraft, the inflight radio communications between Tampa ATC or
> Saint Petersburg/Clearwater and this aircraft, pre filed flight plan
> allowing it to fly in this area, all records of court authority
> (warrant) showing cause to FAA to conduct surv[e]illance, all
> records of Department of Justice or Pinallas County sheriff
> participation, all records of who has tactical of this aircraft.  All
> records of DOJ agreement with FAA to withhold a determination
> of release of these requested records, all records of non-
> privile[]ge[d] communications between DOJ and FAA Tracon
> Tampa, College Park FAA.

Opp., Exh. B.  On July 23, 2013, Plaintiff amended his initial request to include:

> 1. All records of agreement between the entity operating this
>    aircraft and the FAA allowing [it] to either not turn on it[]s
>    transponder or the FAA agreeing not to track the plane.
> 2. All records of radio contact between the commercial jet and
>    Tampa ATC warning the jet of aircraft in the vicinity (in-flight
>    radio communications)
> 3. All records of agreement between "passurslive" and the FAA
>    to allow interruption of live feeds (end taps) to their public web
>    site if any.
> 4. All records if any, presented to the FAA by this entity showing
>    that they have cause of action (warrant) to pursue this
>    surveillance
> 5. All records how long actually the plane was in flight
> 6. All records from w[h]ere it departed, and w[h]ere it landed . . .

7. ALL RECORDS OF WHAT ENTITY HAD TACTICAL
CONTROL OVER THIS AIRCRAFT.

Opp., Exh. C.

The FAA responded to Plaintiff's request in a letter dated November 5, 2013, notifying

him that "[a] records search was conducted at Tampa Airport Traffic Control Tower" and

releasing a "compact disc containing voice re-recordings pertaining to [his] request." Compl.,

Exh. 1. The letter further informed Plaintiff that the "Aircraft Registration Number" had been

redacted pursuant to FOIA Exemption 7(E). Id.

Plaintiff administratively appealed the FAA's response to his request on December 6,

2013. See Compl., Exh. 2. On March 20, 2014, after more than three months had passed

without a determination of his appeal by the agency, Plaintiff filed suit in this Court. Because

Elkins waited more than 20 days after his administrative appeal before filing suit, he is deemed

to have exhausted his administrative remedies. See 5 U.S.C. § 552(a)(6).

On July 16, 2014, the FAA filed this Motion for Summary Judgment, claiming that it

conducted a search reasonably designed to uncover records responsive to Plaintiff's requests,

produced all responsive, non-exempt records, and properly withheld certain records pursuant to

Exemption 7(E). A declaration describing the agency's search efforts and withholdings

accompanied its Motion. See Mot., Exh. A (Declaration of Patricia A. Facey). Plaintiff contests

the Motion, arguing that the FAA failed to address the whole of Plaintiff's FOIA request, that it

did not demonstrate that its search was adequate, that the descriptions of the FAA's withholdings

are insufficient, and that the agency improperly withheld certain records.

## II.     Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011). In FOIA cases, the agency bears the ultimate burden of proof. See Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989). The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

III.    Analysis

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the

governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See 5 U.S.C. § 552(a)(4)(B); Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989).

"Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

The FAA maintains that summary judgment is proper both because it conducted an adequate search for responsive records and because any records not released were properly withheld under Exemption 7(E). The Court cannot concur.

A. Adequacy of the Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). "[T]he issue to be resolved is not whether there might exist any other documents

possibly responsive to the request, but rather whether the <u>search</u> for those documents was

<u>adequate</u>." <u>Weisberg v. Dep't of Justice</u>, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The adequacy

of an agency's search for documents requested under FOIA "is judged by a standard of

reasonableness and depends, not surprisingly, upon the facts of each case." <u>Id.</u> To meet its

burden, the agency may submit affidavits or declarations that explain the scope and method of its

search "in reasonable detail." <u>Perry v. Block</u>, 684 F.2d 121, 127 (D.C. Cir. 1982). Absent

contrary evidence, such affidavits or declarations are sufficient to show that an agency complied

with FOIA. <u>See</u> <u>Perry</u>, 684 F.2d at 127. On the other hand, if the record "leaves substantial

doubt as to the sufficiency of the search, summary judgment for the agency is not proper."

<u>Truitt</u>, 897 F.2d at 542.

   To demonstrate the adequacy of its search in this case, the FAA offers a declaration by

Patricia A. Facey, an FAA Management and Program Analyst whose responsibilities include

processing and responding to FOIA requests. <u>See</u> Facey Decl., ¶¶ 1-2. Facey explains that

Plaintiff's FOIA request sought "various records" pertaining to an aircraft circling in the St.

Petersburg, Florida, area on July 19, 2013. <u>Id.</u>, ¶ 8. According to her declaration, Facey

"requested all responsive records from the Tampa Airport Traffic Control Tower/Terminal Radar

Approach Control ('ATCT/TRACON'), . . . the only facility with records that would be

responsive to plaintiff's FOIA request." <u>Id.</u>, ¶ 9. Plaintiff counters that the FAA failed to

individually address each of the records enumerated in his request and to properly search all

relevant databases. <u>See</u> Opp. at 11.

   Ordinarily, an agency's attestation that it has searched all offices likely to contain

responsive records is sufficient justification for its decision to limit its search to certain locations.

<u>See</u> <u>Oglesby v. U.S. Dep't of Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990); <u>Am. Immigration Council</u>

v. U.S. Dep't of Homeland Sec., No. 12-856, 2014 WL 842311, at *4 (D.D.C. Mar. 5, 2014).

Here, however, after reviewing the FAA's summary-judgment briefing and the Facey

Declaration, the Court is left with distinct uncertainty as to whether the agency appreciated the

whole of Plaintiff's FOIA request. Facey's declaration refers only to "various records" sought

by Plaintiff, without further elaboration. See Facey Decl., ¶ 8. And the FAA's Reply indicates

that the agency understood Plaintiff's request as limited in scope to records likely to be housed at

an airport traffic-control tower. See Reply at 3 (voice recordings uncovered in FAA's search are

the "type of communications between the airplane and air traffic controllers that Plaintiff is

seeking"); see also Facey Decl., ¶ 5 ("Official agency records of the FAA related to the Air

Traffic Control day-to-day operations are generally kept at the Air Traffic Control facility in

which they were generated.").

Plaintiff's request, however, also itemized records likely to be housed elsewhere. For

example, Elkins sought "[a]ll records of DOJ agreement with FAA to withhold a determination

of release of these requested records"; "[a]ll records of agreement between the entity operating

this aircraft and the FAA allowing [it] to either not turn on it[]s transponder or the FAA agreeing

not to track the plane"; and "[a]ll records if any, presented to the FAA by [the entity operating

the aircraft] showing that they have cause of action (warrant) to pursue this surveillance." Mot.,

Exhs. B, C. Common sense dictates that some of these records, should they exist, are unlikely to

be located at an aircraft-control tower.

Under these circumstances, and in light of the FAA's across-the-board failure to provide

the requisite level of detail in justifying its response to Plaintiff's FOIA request, see infra Part

III.B, the Court is reluctant to accept the blanket attestation in the Facey Declaration as

definitively establishing the adequacy of the FAA's search. It will therefore deny the FAA's

Motion for Summary Judgment with respect to this issue. The FAA must make clear in any future declaration that the Tampa Airport Traffic Control Tower is the only location that might house records responsive to each one of Plaintiff's enumerated requests.

### B. The FAA's Withholdings

After sorting through the responsive voice recordings identified by the Tampa Airport Traffic Control Tower, the FAA redacted "certain information" under FOIA Exemption 7(E). Reply at 3. This exemption permits the withholding of records "compiled for law enforcement purposes" if production "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). In its Motion, the FAA asserts that it properly invoked 7(E) for any withheld information and that it properly segregated releasable material from withheld material. See Mot. at 4-8.

Plaintiff asserts that the agency's withholdings are deficient in three respects. First, Elkins takes issue with the FAA's failure to provide a Vaughn Index or otherwise detail each specific withholding or redaction under Exemption 7(E). See Opp. at 11. Second, he maintains that the FAA has not satisfied the requirements of Exemption 7(E) for any of the redacted or denied records. See id. at 3-10. Third and finally, Plaintiff contends that the FAA has failed to establish that no reasonably segregable material exists in the withheld records. See id. at 12. Because the Court agrees with Plaintiff's first contention – namely, that the declaration proffered by the FAA does not meet the requisite level of specificity – it need not proceed further. Put another way, the Court cannot discern precisely what material was redacted and, as a result, cannot evaluate the correctness of the FAA's invocation of Exemption 7(E) or engage in the

necessary segregability analysis.

FOIA was drafted with the objective of affording the public maximum access to most government records. See Vaughn v. Rosen, 484 F.2d 820, 823 (D.C. Cir. 1973). The government, as a result, bears the burden of demonstrating that at least one exemption applies. See id. In order to assist a court in its *de novo* review of the withholdings and to allow the party seeking access to documents to engage in effective advocacy, the government must furnish "detailed and specific information demonstrating 'that material withheld is logically within the domain of the exemption claimed.'" Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 30 (D.C. Cir. 1998) (quoting King v. U.S. Dep't of Justice, 830 F.2d 210, 217 (D.C. Cir. 1987)). This allows for "as full a public record as possible, concerning the nature of the documents and the justification for nondisclosure." Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979). An agency's explanations will not suffice if they "'are conclusory, merely recit[e] statutory standards, or if they are too vague or sweeping.'" Campbell, 164 F.3d at 30 (quoting Hayden, 608 F.2d at 1387).

While FOIA's individual exemptions impose their own tailored evidentiary burden, as a starting point, the government must meet five overarching requirements for each withholding. See King, 830 F.2d at 224. The government must:

> (1) [I]dentify the document, by type and location in the body of documents requested; (2) note that [a particular exemption] is claimed; (3) describe the document withheld or any redacted portion thereof, disclosing as much information as possible without thwarting the exemption's purpose; (4) explain how this material falls within one or more of the categories . . . ; and [if the exemption requires a showing of harm] (5) explain how disclosure of the material in question would cause the requisite degree of harm . . . .

Id.  In circumstances where an in-depth description of a withholding would risk disclosure of

sensitive information, and particularly where a confidential source might be compromised, the

government may supplement its explanations with non-public affidavits and other documents for

*in camera* review by the court.  See Simon v. Dep't of Justice, 980 F.2d 782, 784 (D.C. Cir.

1992) ("[I]n camera review . . . is the best way to assure both that the agency is entitled to the

exemption it claims and that the confidential source is protected.").

In this case, the FAA has fallen substantially short of meeting its obligations.  Its briefing

is replete with vague and conflicting references to redacted material.  See Mot. at 2, 7 (indicating

that only the airplane's "N" number was redacted); Mot. at 6-7 (alluding to broader redactions);

Mot., Attach. 1 (Defendant's Statement of Material Facts), ¶ 4 (indicating again that only the

airplane's "N" number was redacted); Reply at 3 (noting redaction of "certain information").

The Facey Declaration only adds to the confusion.  See Facey Decl., ¶ 13 (stating that the "call

sign" was redacted), id., ¶ 14 (suggesting broader withholding of audio recordings), id.

(acknowledging "N" number redaction).  As Plaintiff points out, the FAA failed to provide a

Vaughn Index or anything comparable that explains with reasonable specificity which records

were released, which records were withheld, and what material was redacted.  See Gallant v.

NLRB, 26 F.3d 168, 173 (D.C. Cir. 1994) ("The materials provided by the agency may take any

form" but it must "give the reviewing court a reasonable basis to evaluate the [agency's] claim of

privilege.") (internal quotation marks omitted).

In light of the FAA's failure to provide the requisite level of clarity and detail, summary

judgment on its withholdings under Exemption 7(E) is unwarranted at this juncture, as is any

determination on the propriety of the agency's segregability determination.

**IV.     Conclusion**

For the foregoing reasons, the Court will deny the FAA's Motion for Summary Judgment in full.  Before renewing its Motion, the agency is advised to submit new documentation to Elkins that demonstrates the adequacy of its search for each requested record and provides a full explanation of its withholdings for any records and redacted portions not made available to him. If Plaintiff remains dissatisfied, the parties may return with further briefing.  An Order accompanies this Memorandum Opinion.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge


Date:  August 28, 2014